**UNITED STATES of America,**
**Appellee,**

v.

**Richard N. WILLIAMS, Defendant–**
**Appellant.**

No. 03–1213.

United States Court of Appeals,
Second Circuit.

Feb. 12, 2004.

Valerie A. Hawkins, Hempstead, New York, for Appellant.

James H. Knapp, Assistant United States Attorney for the Eastern District of New York (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York; Varuni Nelson, Assistant United States Attorney, on the brief), Central Islip, New York, for Appellee.

Present: LEVAL, SOTOMAYOR and WESLEY, Circuit Judges.

### SUMMARY ORDER

Richard N. Williams ("Williams") appeals from a September 20, 2002 order (the "September Order") of the United States District Court for the Eastern District of New York (Glasser, J.), denying his motion to receive reimbursement of monies paid to the Clerk of the Court, and from a January 13, 2003 order of the same court denying his motion for reconsideration of the September Order.

Williams was convicted in 1998 of one count of mail fraud in connection with a scheme to defraud the City of New York (the "City") of property taxes, and sentenced, among other things, to pay restitution in the amount of approximately $105,000 to the City's Department of Finance ("Finance"). Subsequently, the United States filed a lien for this amount, pursuant to 18 U.S.C. § 3613(c), against property owned by Williams (the "U.S. lien"), including a certain property owned by Williams in Brooklyn, New York (the "Brooklyn Property"). In the meantime, for nearly all of the 1990s, Williams remained delinquent for city taxes owed on the Brooklyn Property, for which the City obtained its own liens (the "City liens"). The City sold in years 1999 and 2000 more than $101,000 of its outstanding tax liens against the Brooklyn Property to a trust. Subsequently, when Williams sold the Brooklyn Property in 2001, he paid off the amount owed under the U.S. liens to the Clerk of the Court and also paid to the trust the amount owing under the City liens.

Approximately one year and a half later, Williams filed a motion in the district court seeking a refund of the funds he paid to the Clerk of the Court. The crux of Williams's argument was that he had paid the same tax obligation twice—once to the Clerk of the Court by the restitution payment, and a second time by payment to the trust. He sought a refund of the restitution payment based on, *inter alia*, "the interest of justice." The district court, in its September Order, found that Williams had not demonstrated that the money he paid to the trust was for the same tax delinquencies that were the subject of the restitution order. The district court further noted that the restitution order had been based on tax delinquencies on twelve properties, whereas the City liens had been imposed for tax delinquencies on only one of them. The court stated that to the extent any of Williams's tax payments were duplicative, his remedy lay not with the district court, but with the City through its administrative procedures for tax refunds. The district court also ordered that the restitution moneys previously collected from Williams by the Clerk of the Court be immediately disbursed to the City's Department of Investigation ("Investigation").

On appeal, Williams argues that the district court erred in its September Order by stating that the restitution order was based on delinquencies on twelve properties, including properties not owned by Williams, instead of the five properties he owned and by providing that the restitution monies be released to Investigation, as opposed to Finance, the alleged victim of Williams' crimes. We disagree with both of Williams's arguments.

Based on our review of the record, the judgment of sentence does not contain any information concerning the number of properties upon which the restitution order was based. Nor does the transcript of Williams's sentencing hearing or the Presentence Investigation Report referenced therein provide any clear indication of the basis for the restitution amount. Given the absence of any evidence in the record that the restitution judgment was based only on five properties owned by Williams, and given also that the City provided documentation in response to Williams's motion indicating that the amount of restitution was based on twelve properties, we have no reason to conclude that the court abused its discretion in stating that the restitution was based on delinquencies on twelve, as opposed to five, properties.[1]

Further, the order that the restitution amount be transferred to Investigation instead of Finance was not an abuse of

---

1. The government concedes that the restitution order, based on delinquencies on twelve properties, included the City's lost taxes not only on five properties owned by the defendant but also on seven properties not owned by the defendant, as to which his scheme defrauded the City out of taxes due. *See United States v. Boyd*, 222 F.3d 47, 50 (2d Cir.2000) (per curiam) (holding that restitution may also be imposed to cover "all losses caused in the course of a defendant's criminal conduct"). At oral argument, Williams's counsel asserted that Williams's efforts to recover for duplicative payment (collected as the result of the operation of the two liens) were being frustrated by the City's incorrect understanding of a potentially ambiguous term in the September 20, 2002 order. That order stated that the restitution order was "based on delinquencies on 12 lots." Williams's counsel asserted that City officials took this to mean that the court had determined that Williams is the owner with respect to the twelve lots, whereas in fact, in the case of seven lots, the restitution order was based not on Williams's ownership of those lots but rather on Williams having fraudulently helped the owners to evade their taxes due. The Government undertook to write a letter to Williams (which he could show to the City taxing authorities) making clear what was the basis of the restitution order and explaining

discretion. At the close of the hearing on Williams's motion, the district court directed the City to designate a name and address to which the Clerk of the Court should forward the restitution paid. The City designated Vincent Green, who in his capacity as Assistant Commissioner of the Department of Investigation, served also as Supervising Inspector General for the New York City Department of Finance. In light of this apparently legitimate connection between Investigation and Finance, we conclude that the district court acted within its discretion in ordering that the funds be released to Investigation.

For these reasons, the orders of the district court are AFFIRMED.

that the restitution order for seven of the twelve properties was not predicated on a finding that he was the owner or taxpayer.

We expect that the government will provide Williams with such a letter in accordance with its understanding.